IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Graham & Graham Properties Trust : | |
| : | Case No. C-1-00-922 |
| Plaintiff : | |
| : | District Judge Susan J. Dlott |
| v. : | |
| : | ORDER GRANTING |
| OXY USA Inc. : | SUMMARY JUDGMENT |
| : | |
| Defendant : | |

This matter comes before the Court on Defendant OXY USA Inc.'s Motion for Summary Judgment. (Doc. #33.) For the reasons set forth below, Defendant's motion is **GRANTED**.

**I.   FACTUAL BACKGROUND**

Plaintiff Graham & Graham Properties Trust owns a parcel of land located on Glendale-Milford Road in Hamilton County, Ohio. At one time, the property included a substantial slope to the east that tapered down to a small stream. Sometime between 1965 and 1975, this slope was leveled to the same elevation as the surrounding land using some sort of "fill." This litigation involves the fill used to level the property.

On June 28, 1996, an environmental consulting agency, SRW Environmental Services ("SRW"), informed Mr. John Graham[1] in writing that, while assessing a neighboring site for the

---

[1] In September 1967, Astro Met, Inc. conveyed the property to John Graham and his wife Thelma and Robert Graham and his wife Helen, in one-quarter undivided interests. In December 1999, the interests of the owners and their estates and heirs were consolidated by deed into the Graham and Graham Properties Trust.

impact of a gasoline release, Omega Environmental Services, Inc. ("Omega") had found a "hot spot" of contamination on Plaintiff's property that was unrelated to the gas release.[2] In July of 1997, SRW was hired to conduct a site investigation of certain portions of the property and to begin voluntary clean-up efforts. In October of 1997, during the course of its investigation, SRW excavated the site and found fill material that included inventory records bearing the name "Fred'k H. Levy Co. Ander Chemical Unit" ("Ander"). Ander is a predecessor-in-interest to Defendant OXY USA Inc. ("OXY "), a Delaware corporation that was formerly licensed to do business in Ohio. Plaintiff filed this action against OXY in the Court of Common Pleas for Hamilton County, Ohio on September 27, 2000. OXY removed the case to this Court on diversity grounds. Plaintiff's complaint alleges ten causes of action. The first is a statutory claim under Ohio Revised Code § 3746.23, which holds third parties liable for the release of hazardous substances upon another's property. Claims two through nine allege various Ohio state law property torts, such as trespass, nuisance, and negligence, and the tenth is a claim for injunctive relief. Defendant moves for summary judgment on claims two through ten.

## II.    STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the

---

[2]Omega discovered the contamination on Plaintiff's property while assessing the potential off-site migration of a gas release at a nearby Shell station owned by Englefield Oil Company. Omega left the Ohio marketplace before completing the remedial activities at the Shell station, so Englefield Oil Company hired SRW to undertake the balance of the project.

evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). On those issues for which it shoulders the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted). For those issues on which the moving party will not have the burden of proof at trial, the movant must "point[] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings, but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Although "[t]he mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient" to overcome a summary judgment motion, Anderson, 477 U.S. at 252, a court should not grant summary judgment merely because the nonmovant's case appears weak. The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. A genuine issue for trial exists when there is

sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

## III.   ANALYSIS

Defendant makes a number of arguments in support of its motion for summary judgment. In addition to challenging Plaintiff's property tort claims on their merits, Defendant claims that Plaintiff failed to file these claims within the statute of limitations set forth in the Ohio Revised Code. Because it finds that Defendant's statute of limitations argument succeeds, the Court need not consider the merits of claims two through nine. However, the Court will address Plaintiff's claim for injunctive relief on its merits.

### A.   Statute of Limitations

The parties agree that Ohio Revised Code § 2305.09 sets forth the statute of limitations for Plaintiff's claims two through nine:

> An action for any of the following causes shall be brought within four years after the cause thereof accrued:
>
> (A) For trespassing upon real property;
>
> (B) For the recovery of personal property, or for taking or detaining it;
>
> (C) For relief on the ground of fraud;
>
> (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, 2305.14 and 1304.35 of the Revised Code.
>
> If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.

Ohio Revised Code § 2305.09. Generally, the statute of limitations in a damages action begins to run when a wrongful act is committed. See Harris v. Liston, 714 N.E.2d 377, 378 (Ohio 1999). Under this basic analysis, Plaintiff's claims would fail, as the dumping of the contaminated fill took

place at least twenty-eight years before Plaintiff filed this action. However, Ohio courts have stayed the running of the statute of limitations in some cases until the injury is first discovered or through the exercise of reasonable diligence should have been discovered. See Harris, 714 N.E.2d at 378. This discovery rule applies in suits, such as this one, that seek to recover for injuries to real property. Id. Nevertheless, even under this rule, Plaintiff's claims are untimely, as SRW notified John Graham of the contamination by letter on June 28, 1996, four years and three months before Plaintiff filed this action.

      Plaintiff contends that the above formulation of the discovery rule improperly limits its scope, relying on Liddell v. SCA Servs. of Ohio Inc., 635 N.E.2d 1233 (Ohio 1994). In Liddell, a police officer developed cancer in his nasal cavity after exposure to toxic gas from a burning garbage truck carrying calcium hypochlorite. 635 N.E. 2d at 1233-34. The officer did not know that his problems were due to the gas exposure until his physician informed him nine years later that there might be a relationship between the cancer and his exposure to toxic fumes. Id. The Ohio Supreme Court held, "When an injury allegedly caused by exposure to toxic chlorine gas does not manifest itself immediately, a cause of action for that injury arises upon the date the plaintiff is informed by competent medical authority that he has been injured by exposure to the gas, or upon the date which, by exercise of reasonable diligence, he should have become aware that he had been so injured, whichever date occurs first." Id. at 1234 (syllabus). Plaintiff interprets this holding to mean that, in some instances, the statute of limitations does not begin to run until the identity of the wrongdoer has been discovered. Liddell, though, did not involve a situation where the identity of the wrongdoer was unknown; rather, accrual of plaintiff's cause of action depended on when he learned of the relationship between exposure to toxic gas and his medical condition. Id. at 1234.

Moreover, Liddell involved the proper application of O.R.C. § 2305.10, which, at that time, stated simply that "[a]n action for bodily injury shall be brought within two years after the cause thereof arose." Id. at 8. In contrast, the plain language of O.R.C. § 2305.09 specifies three instances in which a cause of action does not arise until discovery of the wrongdoer, none of which applies to Plaintiff's claims. As a general rule of statutory interpretation, "the specific mention of one thing implies the exclusion of another." See Montgomery County Bd. of Comm'rs v. Public Utilities Comm'n., 503 N.E.2d 167, 175 (1986). Thus, it follows that the Ohio legislature, by not explicitly exempting claims like Plaintiff's from § 2305.09, meant for them to fall within its ambit. The Court will not ignore that intention by unilaterally creating an exception to the clear language of the statute here.[3]

Furthermore, requiring a plaintiff in a real property tort case to bring his claim within four years of discovering his injury, even if he does not know the identity of the tortfeasor, does not compromise principles of fairness or justice; rather, it represents a fair balance of the equities due to both parties. Statute of limitations are intended: "to ensure fairness to defendant; to encourage prompt prosecution of causes of action; to suppress stale and fraudulent claims; and to avoid the inconvenience engendered by delay, specifically the difficulties of proof present in older cases." O'Stricker v. Jim Walter Corp., 447 N.E.2d 727, 731 (Ohio 1983). Here, even not knowing who put

---

[3]In one exceptional case, not cited by the parties, the Supreme Court of Ohio held that despite statutory language stating "an action for wrongful death shall be commenced within two years after the decedent's death," a plaintiff's cause of action for wrongful death arising from a murder did not accrue until the defendant has been convicted and sentenced for the murder. Collins v. Sotka, 81 Ohio St. 3d 506 (1998). In so ruling, the Ohio Supreme Court seemed to be influenced by the tragic and unusual nature of the case. No Ohio court has extended the rule in Collins to other causes of action, and there is no indication that the Supreme Court would do so here.

the fill on its land, Plaintiff easily could have brought its claim within the four-year statute of limitations. Both Ohio Civil Rule 15(D) and Federal Rule of Civil Procedure 15(c)(3) permit potential plaintiffs to preserve causes of action by filing a complaint naming an unknown defendant. See also Collins v. Sotka, 692 N.E.2d 581, 589-90 (Ohio 1998) (Moyer, J., dissenting) ("potential plaintiffs may preserve their rights by filing a complaint naming the defendant as unknown and then subsequently filing an amended complaint if the identity of the plaintiff is discovered pursuant to Civ. R. 3 and 15(D)"). Additionally, Plaintiff knew of OXY's involvement in the contamination three years before the statute of limitations expired. Thus, Plaintiff had no basis for waiting more than four years after discovering the contamination to file his claim. The Court therefore finds that Plaintiff filed this action outside of the statute of limitations provided for in O.R.C. § 2305.04.

One additional argument by Plaintiff deserves attention. Plaintiff argues that the contamination on the property is a continuing trespass for which a trespass action continuously accrues and that, as a result, its trespass actions are not barred. Under Ohio law, there are two types of trespass to property: a permanent trespass and a continuing trespass. In a permanent trespass, the injury occurs all at once, thus triggering the running of the statute of limitations at that instant. Abraham v. BP Exploration & Oil Inc., 778 N.E.2d 48, 53 (Ohio 2002). In contrast, in a continuing trespass, the tort is ongoing as the injury accrues over time. For example, a railroad is liable for continuous trespass if it builds a dam and diverts water directly onto another's land, causing the land to continuously corrode. Valley R.R. Co. v. Franz, 4 N.E. 88, 89-90 (Ohio 1885). Plaintiff contends that the contamination on its property is a continuing trespass, relying on Davis v. Allen, Nos. C-010165, C-010202, C-010260, 2002 WL 63560 (Ohio Ct. App. Jan. 18, 2002). There, an Ohio appellate court held that a plaintiff had a cause of action for continuous trespass where, like here,

the defendants failed to remove fill dumped onto the plaintiff's property. However, unlike here, the plaintiff in Davis suffered continuing injury as a result of the "continuing failure of the appellees to remedy the problem on the Lossing Street property and the landslides caused by that failure." 2002 WL 63560, at *2. This continuing damage formed the basis for the plaintiff's trespass claim, as the court held that the plaintiffs could recover only damages incurred during the four years before the filing of the complaint. Id. at *9. See also Nieman v. NLO, Inc. 108 F.3d 1546, 1559 (6th Cir. 1997) (holding that, in an action for continuing trespass, plaintiff could recover only damages incurred within the four years prior to the filing of the lawsuit). Here, there is no evidence that Plaintiff's property suffered any additional injury during the four years before Plaintiff filed the complaint. Specifically, Plaintiff alleges two types of damages: 1) its inability to sell the property and its diminished value; and 2) its inability to develop buildings on the land. However, there is no evidence that the value of the property dropped during the four years prior to the filing of the suit or that the development of the land became less feasible during that time. Therefore, the injury to the land was not a continuing trespass.

    **B.**    **Injunctive Relief**

Plaintiff claims that the Court is empowered to grant injunctive relief here for two reasons: 1) it is so empowered by state statute; and 2) its equitable power grants it that authority. Plaintiff's first argument fails, because Plaintiff cites to no Ohio law, and the Court finds none, that authorizes injunctive relief in this case.

As to Plaintiff's second argument, a Court may grant injunctive relief as an equitable remedy only if no other legal remedy exists. Mid-America Tire Inc. v. PTZ Trading Ltd., 768 N.E.2d 619 (Ohio 2002). Plaintiff lists nine other causes of action in its complaint, including a claim for relief

under Ohio Rev. Code § 3746.23, that provide remedies that nearly mirror the requested injunctive relief. Since these other legal remedies may provide Plaintiff with adequate redress, injunctive relief is not appropriate here.

Furthermore, a plaintiff requesting an injunction must show by "clear and convincing evidence, actual irreparable harm or an actual threat of irreparable harm."[4] See Dayton Metro. Hous. Auth. v. Dayton Human Relations Council, 611 N.E.2d 384, 442 (Ohio App. 1992). Plaintiff contends that it has suffered and is continuing to suffer irreparable harm, because the contaminated fill continues to cause damage to its property. However, the harm caused to Plaintiff by the waste is not irreparable; rather, the buried waste will cause damage only as long as it remains on the property, and the cost of remediating the property may be recovered at law.

Lastly, the purpose of injunctive relief is to prevent future injury, not to remedy past harms. Id. However, as explained above, the injury to the property is not ongoing, so there is no need for an injunction to prevent future injury. Instead, the injunction that Plaintiff requests would serve to remedy only the past harms caused by the contaminated fill.

---

[4]Defendant's motion states that the "clear and convincing evidence" standard is found in "D&J Company v. Stuart, 146 Ohio App. 3d 67, 80, 765 N.E.2d 368, 378 (2001)." The Court notes that the opinion in D&J neither references a "clear and convincing evidence" standard nor contains a page 80.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**. (Doc. #33.)

IT IS SO ORDERED.

___s/Susan J. Dlott__  
Susan J. Dlott  
United States District Judge
