**IN THE COURT OF COMMON PLEAS**
**MONTGOMERY COUNTY, OHIO**

FILED
COURT OF COMMON PLEAS

99 FEB 17 AM 9: 47

CLERK OF COURTS
MONTGOMERY CO., OHIO

| | | |
|---|---|---|
| SRW ENVIRONMENTAL SERVICES, INC. | ) | CASE NO. 98-4757 |
| | ) | |
| | ) | Judge _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHIL MULLINS d/b/a | ) | **ANSWER OF PLAINTIFF SRW** |
| JIM'S AUTO SERVICE | ) | **ENVIRONMENTAL SERVICES, INC.** |
| | ) | **TO COUNTERCLAIM OF** |
| | ) | **DEFENDANT PHIL MULLINS d/b/a** |
| Defendant. | ) | **JIM'S AUTO SERVICE** |
| | ) | |

1.    Plaintiff admits Paragraph 1 of Defendant's Counterclaim.

2.    Plaintiff admits Paragraph 2 of Defendant's Counterclaim.

3.    In regard to Paragraph 3 of Defendant's Counterclaim, Plaintiff admits that on or about June 12, 1998, it entered into a contract with Defendant to provide services at the 2600 Woodman Drive location and that these services were to include, *inter alia*, removal of petroleum underground storage tanks. Plaintiff further affirmatively states that the terms of the contract and the proposal were later modified by a written Change Order signed by Defendant. (A true and accurate copy of said Change Order was attached to Plaintiff's Complaint as Exhibit B.) Plaintiff denies each and every other allegation contained in Paragraph 3 of the Counterclaim.

I hereby certify this to be a true
and correct copy.
Witness my hand and seal this _8__
day of _September_ 20 03.

_____ , Clerk

Clerk of Common Pleas
Court of Montgomery County, Ohio
By _____
Deputy

4.     Plaintiff denies each and every allegation in the remaining Paragraphs of Defendant's Counterclaim.

Respectfully submitted,

David J. Schmitt (0055550)
Susan R. Bell (0069574)
Cors & Bassett
537 East Pete Rose Way
Suite 400
Cincinnati, Ohio 45202
(513) 852-8200
Fax (51) 852-8222

Trial Attorneys for Plaintiff
SRW Environmental Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon Dennis J. Adkins, Esq. at 1700 One Dayton Centre, One South Main Street, Dayton, Ohio 45402, by regular U.S. mail, postage prepaid, this 18 day of February, 1999.

David J. Schmitt



FILED
COURT OF COMMON PLEAS

99 FEB -3 PM 2:52

GREGORY BRUSH
CLERK OF COURTS
MONTGOMERY CO., OHIO

## IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| SRW Environmental Services, Inc. | : | CASE NO. 98-4757 |
| Plaintiff | : | |
| v. | : | |
| Phil Mullins | : | **ANSWER AND** |
| dba Jim's Auto Service | | **COUNTER CLAIM** |
| | : | |
| Defendant | : | |

--------------------------------------------------------------------------------

NOW COMES the Defendant, Phil Mullins dba Jim's Auto Service, by and through counsel, and for his Answer to Plaintiff's Complaint and Counter Claim, hereby states as follows:

### ANSWER OF DEFENDANT

### FIRST DEFENSE

1. Defendant admits Paragraphs 1 and 2 of the Plaintiff's Complaint.

2. Defendant denies Paragraphs 5 and 7 of the Plaintiff's Complaint.

3. As to Paragraph 3 of the Plaintiff's Complaint, Defendant admits entering into a contract on or about June 12, 1998, with the Plaintiff, but denies each and every allegation contained therein.

4. As to Paragraph 4 of the Plaintiff's Complaint, Defendant states that on or about July 31, 1998, the Defendant did sign a change order, but denies each and every allegation contained therein.

5. As to Paragraph 6 of the Plaintiff's Complaint, Defendant admits that copies of invoices are attached to the Complaint, but denies each and every allegation contained therein.

ALTICK
&
CORWIN
CO., L.P.A.

700 ONE DAYTON CENTRE
ONE SOUTH MAIN STREET
DAYTON, OHIO 45402

I hereby certify this to be a true and correct copy.

Witness my hand and seal this 10th day of September 20 03

Dan Foley, Clerk
Clerk of Common Pleas
Court of Montgomery County, Ohio
By C. Stephens
Deputy

4021

## SECOND DEFENSE

6.    Defendant states that Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

7.    Defendant states that there has been insufficiency of service and insufficiency of process of service.

## FOURTH DEFENSE

8.    Defendant states that the Plaintiff has failed to join necessary parties.

## FIFTH DEFENSE

9.    The claims of the Plaintiff are barred by the law and principles of waiver, estoppel, latches.

## COUNTER CLAIM OF DEFENDANT

## FIRST CAUSE OF ACTION

1.    Defendant is the owner of real property located at 2600 Woodman Drive, Montgomery County, Kettering, Ohio 45420. On said property the Defendant operates a business known as Jim's Auto Service.

2.    Plaintiff SRW Environmental Services, Inc. (SRW), an Ohio Corporation, having its place of business at 55 West Technecenter Drive, Suite C, Milford, Ohio 45150.

3.    On or about June 12, 1998, Defendant and Plaintiff entered into a contract in which SRW was to provide services to the property located at 2600 Woodman Drive, Montgomery County, Kettering, Ohio 45420. The services to be provided were for general construction services ("Services"), for the removal of gasoline tanks and the restoration of the area. A copy of the contract is attached hereto and incorporated herein as Exhibit "A", and a copy of the proposal setting forth specific costs of the contract is attached hereto and incorporated herein as Exhibit "B".

4.    The services performed by the Plaintiff were performed in an unworkmanlike, unprofessional, and defective manner, in violation of the contract with the Defendant that said work would be performed in a professional manner and free of defects.

5.    Plaintiff has breached the contract with the Defendant in that the Plaintiff has failed to complete the work required to be performed by it, and said services done by the



ALTICK
&
CORWIN
CO., L.P.A.

700 ONE DAYTON CENTER
ONE SOUTH MAIN STREET
DAYTON, OHIO 45402

Plaintiff were not done in a workmanlike manner and/or were not free of defects in its completion and/or the Plaintiff failed to utilize industry standards in its construction services.

6. Defendant has performed all conditions required to be performed by him.

7. As a direct and proximate result of the Plaintiff's breach of contract, the Defendant has incurred damages, including but not limited to the following: additional costs to repair damages caused by the Plaintiff; the Defendant's property has been diminished in value; the loss of the normal use of his business; and the Defendant has incurred the following expenses for professional services, including but not limited to, the services of other contractors, inspectors, and legal counsel.

## SECOND CAUSE OF ACTION

8. Defendant hereby reallege each and every allegation contained in paragraphs 1 through 5 herein.

9. Plaintiff negligently and carelessly performed the services at Defendant's place of business.

10. During the course of the services, the Defendant discovered unworkmanlike and defective conditions, including but not limited to the following: the breaking of gas lines; the contamination of the water and soil at the construction site as a result of the breaking of gas lines; the additional removal and replacement of additional soil beyond what would be normal for such project; the additional cost of pumping out additional water and gasoline; and other structural and cosmetic defects.

11. Said defects have caused great inconvenience, annoyance, and property damage, and have required expenditures to be paid by the Defendant in attempts to repair the defects.

12. Said defects in the services resulted in an offer to buy said business being revoked by a Buyer, causing additional damages to the Defendant.

13. As a direct and proximate result of the Plaintiff's negligent work performed on the construction project and/or Plaintiff's failure to perform the services in a workmanlike and professional manner, the Defendant has incurred damages, including but not limited to: mental anguish and the loss of the normal use of his business; the diminished value of the real property; and expenses for professional services, including but not limited to, services of additional contractors, inspectors and legal counsel.



ALTICK
&
CORWIN
CO., L.P.A.

: 700 ONE DAYTON CENTRE
ONE SOUTH MAIN STREET
DAYTON, OHIO 45402

## THIRD CAUSE OF ACTION

14.     Defendant hereby reallege each and every allegation contained in paragraphs 1 through 11 herein.

15.     At all times herein, Plaintiff specifically and/or impliedly warranted that said services would be performed in a workmanlike and professional manner, free from defects, and would be consistent with the standards of competent work of other contractors and/or industry standards.

16.     At all times herein, Plaintiff breached its warranties as set forth herein.

17.     As a direct and proximate result of the Plaintiff's negligent work performed and/or Plaintiff's failure to perform the services in a workmanlike and professional manner, the Defendant has incurred damages, including but not limited to: mental anguish and the loss of the normal use of his business; the diminished value of the real property; and expenses for professional services, including but not limited to, services of additional contractors, inspectors and legal counsel.

WHEREFORE, Defendant demands:

1.     That the Plaintiff's Complaint be dismissed at Plaintiff's costs;

2.     For compensatory damages against the Plaintiff in the amount of $100,000;

3.     The costs of this action, including reasonable attorney fees;

4.     For whatever relief in law or equity this Court may deem appropriate.

DENNIS J. ADKINS, ESQ.
Altick & Corwin Co., L.P.A.
1700 One Dayton Centre
One South Main Street
Dayton, Ohio 45402
(937) 223-1201
Attorney for Defendant
Ohio Supreme Court #0034488

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon David J. Schmitt, CORS &



BASSETT, 537 East Pete Rose Way, Suite 400, Cincinnati, Ohio 45202, by regular U. S. mail, postage prepaid, this ___3___ day of February, 1999.

DENNIS J. ADKINS, ESQUIRE



ALTICK
&
CORWIN
CO., L.P.A.

700 ONE DAYTON CENTRE
ONE SOUTH MAIN STREET
DAYTON, OHIO 45402

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------x
                        :

**MAGNETEK, INC.,**           :    Civil Action No.

    **Plaintiff,**         :    Honorable Judge _____

                        :

      **vs.**           :    MAGISTRATE JUDGE KING

                        :    **COMPLAINT**

**H.C. NUTTING COMPANY and**  :    **DEMAND FOR JURY TRIAL**

**MICHAEL D. WEINSTEIN,**    :    C 2 - 9 5 -  4 4 1

                        :

    **Defendants.**       :

---------------------------------------x

Plaintiff MagneTek, Inc. ("MagneTek"), for its Complaint against defendants The H.C.

Nutting Company ("Nutting") and Michael D. Weinstein ("Weinstein"), states as follows:

<u>Parties</u>

1.    Plaintiff MagneTek is a Delaware corporation with its principal place of

business located at 26 Century Boulevard, Nashville, Tennessee 37229.

2.    Defendant Nutting is an Ohio corporation with a place of business located at

790 South Morrison Road, Blacklick, Franklin County, Ohio 43004-9760.

3.    Defendant Weinstein is an Ohio resident with an address at 629 Regent Road,

Cincinnati, Ohio 45245.  Weinstein was an employee, agent or representative of Nutting

until in or about 1993 or 1994.

<u>Jurisdiction and Venue</u>

4.    This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332.

The controversy is between citizens of different states, and the matter

the sum or value of $50,000, exclusive of interest and costs.



I CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY OF THE
ORIGINAL FILED IN MY OFFICE
ON _April 18, 1995_
KENNETH J. MURPHY, CLERK
BY: _____
Deputy Clerk
DATE: _September 2008_

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a). Nutting and Weinstein reside in this judicial district, and the acts committed by them which gave rise to MagneTek's claims against them occurred in this judicial district.

FIRST COUNT

VIOLATION OF THE DECEPTIVE TRADE PRACTICES STATUTE

6.      Paragraphs 1 through 5 are incorporated by reference as if fully restated herein.

7.      The property at 1160 Dublin Road in Columbus, Ohio (the "Property") has been used continuously for industrial purposes since approximately 1941.  During World War II, Denison Engineering Company operated a major war production plant at the Property.  After World War II and continuing until approximately 1979, several predecessors of Pneumo Abex Corporation (collectively, "Abex") conducted operations at the Property including the manufacture and testing of hydraulic machinery, pumps and parts.  The operations conducted at the Property during this period used and disposed of a variety of hazardous substances in a manner unregulated under federal, state or local law and in doing so contaminated the soil and groundwater at the Property.  MagneTek had no connection with the operations conducted at the Property during the years 1941 through 1987.

8.      In or about 1979, Robert C. Kanuth, Jr. ("Kanuth") purchased the contaminated Property from Abex and leased buildings at the Property ("the Premises") to National Electric Coil, a division of McGraw-Edison Company.  National Electric Coil operated a business at the Premises repairing, refurbishing and rebuilding railway motors and generators (the "Business").  In 1984 Kanuth conveyed the Property to 1160 Dublin Road

-2-

Associates ("1160 Dublin"), a limited partnership in which Kanuth was, and remains, the

managing general partner. In or about 1987 MagneTek acquired the operations of National

Electric Coil from Cooper Industries, Inc. In 1989 the McGraw-Edison lease expired, an

option under it was terminated, and 1160 Dublin and MagneTek negotiated and entered into

a new lease.

9.    After acquiring the operations of National Electric Coil, MagneTek continued

to operate the Business. MagneTek's operations at the Premises have been conducted in

compliance with its lease obligations and applicable environmental laws and regulations.

MagneTek has not caused the contamination of soil or groundwater at the Property

purportedly identified by Nutting and Weinstein.

10.    Upon information and belief, in or about 1989, 1160 Dublin sought to

refinance the Property, was required by a prospective lender to conduct soil and groundwater

sampling at the Property, and retained Nutting for that purpose. Weinstein, designated by

Nutting variously as the project geologist, project manager or group leader, supervised

Nutting's limited sampling and testing of soil and groundwater at the Property in November,

1989 and August, 1990.

11.    In purported reliance on such sampling and testing, Nutting issued a report on

or about March 7, 1991 claiming to detect soil and groundwater contamination at the

Property (the "March 7 report"). The report failed to specify the extent of contamination.

Nor did the report make any attempt to identify the causes or sources of the contamination or

when it occurred. "The full history of compounds and their use at the property," the report

conceded, "has not been defined at this time."

-3-

12.    The sampling and testing performed in connection with the March 7 report did not provide any reasonable basis for identifying the causes or sources of the contamination. In a September 13, 1991 letter from Weinstein to Steve Haughey, an attorney, agent or representative of Kanuth and 1160 Dublin, Nutting admitted that it had obtained "very little" information regarding prior operations at the Property, that this "information revealed very little about past uses of the property," and that interviews conducted by Nutting were "also of little value."  The March 7 report expressly recommended that further investigation be conducted.  Nutting, Weinstein, Kanuth and 1160 Dublin never conducted the recommended investigation.

13.    On May 2, 1991, without having performed any additional research or investigation since the March 7 report, Weinstein wrote a letter to Stuart S. Savage, an employee, agent or representative of Kanuth and 1160 Dublin (the "May 2 letter").  In the May 2 letter Nutting and Weinstein alleged that the "environmental liabilities revealed in the investigation of the site are the direct result of past and present manufacturing activities and associated raw product and waste handling practices by Magnetek Inc."  This statement was false.  At the time Nutting and Weinstein made this false allegation against MagneTek, they had no reasonable basis for identifying MagneTek as the source of the soil or groundwater contamination at the Property.

14.    Weinstein, on Nutting's behalf, made this false statement that MagneTek had caused the soil and groundwater contamination at the Property notwithstanding that (a) in 1989 when Nutting began collecting soil and groundwater samples, MagneTek had operated at the Property for only about two years, (b) other entities had conducted industrial and

manufacturing operations at the Property for at least the preceding 46 years, (c) there was a total absence of evidence showing that MagneTek's operations after January 1, 1987 had caused the soil and groundwater contamination, and (d) Weinstein and Nutting had failed to investigate adequately the historical activities at the Property.

15.     Weinstein also made this false statement despite another major source of potential groundwater contamination of the Property:  a release of hazardous substances into groundwater at a nearby parcel of land known as 1220 Dublin Road, first reported in approximately 1987.  At or about the time Weinstein and Nutting were falsely attributing the groundwater contamination to MagneTek, the State of Ohio determined that the 1220 Dublin Road site was a significant source of groundwater contamination migrating offsite in the area, and directed the owner of that site to conduct an extensive groundwater investigation which, on information and belief, remains pending.  One or more of the contaminants being investigated by the nearby owner are the same hazardous substances Nutting claims to have identified in groundwater at the Property.  Nutting's own report reflects that the groundwater flow at the Property may occur from the direction of this nearby parcel of land.  On information and belief, Nutting and Weinstein failed to investigate whether the  groundwater contamination at the Property was the result of contamination migrating from the 1220 Dublin Road site.

16.     Based upon the false statement in the May 2 letter, Kanuth and 1160 Dublin demanded that MagneTek alone assume responsibility for any and all soil and groundwater contamination at the Property.

17.    MagneTek refused these demands, but in the spirit of conciliation offered to pay half of the cost of conducting a genuine investigation into the extent and causes of the soil and groundwater contamination.  Kanuth and 1160 Dublin refused MagneTek's offer, continuing to insist in reliance upon Weinstein's May 2, 1991 letter that MagneTek was to blame for any soil and groundwater contamination at the Property.

18.    In July, 1994, 1160 Dublin filed suit against MagneTek in an environmental action entitled <u>1160 Dublin Road Associates and Robert C. Kanuth, Jr. v. MagneTek, Inc., Pneumo Abex Corp. and Cooper Industries, Inc.</u>, presently pending before Judge Holschuh and Magistrate Judge King in the United States District Court for the Southern District of Ohio, Eastern Division, and designated as Civil Action No. C2-94-696 (the "Federal Action").  But for the false statements in the May 2 letter, 1160 Dublin would not have brought the Federal Action against MagneTek.

19.    With the knowledge of 1160 Dublin, in mid-1994 MagneTek and a wholly owned subsidiary began negotiating for the sale of the assets of the Business to Rail Products International, Inc. ("Rail Products").  The principals of Rail Products, MagneTek's existing management personnel responsible for the Business, intended to continue conducting the Business in the same manner as MagneTek after the acquisition, using largely the same personnel who previously operated the Business, the same equipment and the same methods and techniques.

20.    The sale to Rail Products was initially conditioned upon MagneTek's ability to assign the lease to Rail Products.  On or about July 26, 1994, MagneTek sought 1160 Dublin's consent to the assignment, as required by the lease, by presenting a proposed

-6-

Assignment, Assumption and Consent Agreement (the "Assignment Agreement"). 1160 Dublin refused to consent to the assignment of the lease because of its assertion, premised in whole or in part upon the false statements in the May 2 letter, that MagneTek had caused the soil and groundwater contamination at the Property.

21.     1160 Dublin refused to consent to the assignment of the lease despite (a) the Assignment Agreement's express provision that MagneTek would remain liable for all obligations under the lease, and (b) the undisputed documentation provided to 1160 Dublin demonstrating Rail Products' financial stability.

22.     While Kanuth and 1160 Dublin refused to consent to the assignment of the lease, they indicated they might consent if MagneTek agreed to bear sole responsibility for, among other things, remediating and removing any soil and groundwater contamination at the Property and shouldering the expense of annual environmental investigations and audits.

23.     The ability of MagneTek and Rail Products to consummate the transaction as originally contemplated depended upon prompt consent to the assignment by 1160 Dublin. The time-sensitive financing necessary for Rail Products to acquire the Business, the need for the Business to continue uninterrupted operations and service to its customers (whose contracts are also highly time-sensitive) and the need for certainty in the business affairs of both MagneTek and Rail Products made it imperative to obtain 1160 Dublin's consent to assignment within a reasonable period of the request. MagneTek took all reasonable steps to expeditiously achieve the assignment, including repeated requests to Kanuth and 1160 Dublin, and even commenced an action in the Court of Common Pleas for Franklin County, Ohio to enjoin consent to the assignment (this action, referred to herein as the "State

Action," was ultimately dismissed in favor of the Federal Action).  Kanuth and 1160 Dublin nonetheless avoided timely adjudication and continued to refuse to consent to the assignment because, they continued to assert, MagneTek had contaminated soil and groundwater at the Property.

24.    This refusal of 1160 Dublin to consent obstructed, interfered with and in fact took away the ability of the Business to operate at the Premises, and thus deprived MagneTek and its proposed assignee Rail Products of the use and enjoyment of the Property. The transaction could not be consummated when and as contemplated, and the Business could not continue to operate at the Property and was forced to bear the burden of relocating to another site.  MagneTek was forced to restructure the transaction with Rail Products.

25.    This restructuring increased the cost to MagneTek of consummating the transaction, forced MagneTek to incur other costs (including the expense of relocating the Business) and exposed MagneTek to liabilities.  Rail Products also has been damaged thereby.  To the extent that MagneTek is or becomes obliged to indemnify or otherwise compensate Rail Products for such damages, MagneTek will be further damaged by 1160 Dublin's and Kanuth's refusal to consent.  In addition, MagneTek's and Rail Product's relationships with their customers already have been damaged by the delay in completing the acquisition, in an as yet undetermined amount.

26.    Nutting and Weinstein engaged in a deceptive trade practice under Section 4165.02(H) of the Ohio Revised Code when, in the course of their business, vocation and occupation, they disparaged the business of MagneTek by falsely representing in the

-8-

May 2 letter that MagneTek was directly responsible for causing soil and groundwater contamination at the Property.

27.    MagneTek is entitled to recover the damages it has sustained, and that it sustains in the future, as a proximate result of Weinstein's and Nutting's deceptive trade practice in making the false representation of fact in the May 2 letter to Kanuth and 1160 Dublin.  These damages include without limitation the amounts described in paragraph 25, MagneTek's attorney's fees and other costs of defending the Federal Action and prosecuting the State Action, and MagneTek's attorneys fees and costs in this action (as provided by Ohio Revised Code Section 4165.03).

**SECOND COUNT**

**Willful, Wanton and Reckless Misconduct**

28.    Paragraphs 1 through 27 are incorporated by reference as is fully restated herein.

29.    Nutting holds itself out as providing professional engineering services, and Nutting and Weinstein characterized the services they were providing to 1160 Dublin and Kanuth as "professional and environmental engineering services."  As providers of professional engineering services under Chapter 4733.35 of the Ohio Revised Code, Weinstein and Nutting owed duties, and were on notice that they owed duties, to MagneTek, which would forseeably be harmed by the statements in their reports and, specifically, in the May 2 letter.  Weinstein and Nutting owed duties to MagneTek to exercise such care as a reasonably prudent and careful person would use under similar circumstances.  These duties included, without limitation: (a) to be completely objective when issuing the May 2 letter; (b)

-9-

to include all relevant and pertinent information in the May 2 letter when the result of omitting relevant and pertinent information would, or reasonably could, lead to the fallacious conclusion that MagneTek was primarily responsible for causing soil and groundwater contamination at the Property; and (c) to ensure that the statements made in the May 2 letter were founded upon adequate knowledge of the facts in issue, upon a background of technical competence in the subject matter, and upon an honest conviction of the accuracy and propriety of the statement.

30.     Weinstein and Nutting were not objective or factual when they made the false statement in the May 2 letter attributing the soil and groundwater contamination at the Property to MagneTek.  Their failure to be objective and factual breached their duties to MagneTek.  Weinstein's and Nutting's omission of the possibility, indeed the probability, that other parties had caused soil and groundwater contamination at the Property or at least contributed to the contamination, and their failure to investigate prior uses of the Property, breached their duties to MagneTek to obtain and include all relevant and pertinent information in the letter.  Weinstein and Nutting did not ensure that the statement in the May 2 letter was founded upon any, much less adequate, knowledge of the prior uses of the Property, and they have conceded as much elsewhere.  Thus their false statement blaming MagneTek for the soil and groundwater contamination at the Property could not have been founded on an honest conviction of the statement's accuracy and propriety.  Here, too, they breached duties they owed to MagneTek.  Nutting and Weinstein failed to exercise any degree of professional care or responsibility.

31.     The false statement made by Weinstein and Nutting in the May 2 letter that the soil and groundwater contamination at the Property was directly attributable to MagneTek's two-year occupancy was unwarranted, wrongful, willful, wanton, reckless and made with a conscious disregard for the rights of MagneTek and the probable consequences of making such an assertion to MagneTek's landlord.  Upon information and belief, Nutting and Weinstein have continued to willfully, wantonly and recklessly reiterate this statement or similar statements to Kanuth, 1160 Dublin and their attorneys, employees, representatives and agents from time to time since May 2, 1991.

32.     Nutting and Weinstein were aware that there was a lease agreement and business relationship between MagneTek and 1160 Dublin.  It was foreseeable and probable when Nutting and Weinstein sent the May 2 letter that the landlord-tenant relationship would be harmed.  It was foreseeable and probable that 1160 Dublin would treat the letter as true and would itself blame MagneTek for contamination at the Property, and that various foreseeable events would flow from this conclusion, including efforts by 1160 Dublin to force MagneTek to bear the cost and responsibility of investigating and remediating soil and groundwater contamination at the Property.

33.     MagneTek is entitled to recover damages it has sustained, and that it sustains in the future, as a proximate result of Weinstein's and Nutting's willful, wanton and reckless misconduct in making the false assertion to Kanuth and 1160 Dublin that MagneTek was directly responsible for the soil and groundwater contamination at the Property.  These damages include without limitation the damages set forth in paragraphs 25 and 27 above.

## THIRD COUNT

### Business Interference

34.    Paragraphs 1 through 33 are incorporated by reference as if fully restated herein.

35.    A lease of the premises and a business relationship existed between MagneTek and 1160 Dublin while Nutting and Weinstein were conducting their sampling and testing and when Nutting and Weinstein wrote and issued the May 2 letter.  Nutting and Weinstein knew of the existence of the lease and the business relationship.

36.    Except for Nutting and Weinstein's assertion that MagneTek was the direct cause of the soil and groundwater contamination at the Property, MagneTek and 1160 Dublin were reasonably certain to continue to perform under the lease and to maintain their amicable business relationship, and it is reasonably certain that 1160 Dublin would have consented to the assignment of the lease to Rail Products.

37.    Nutting's and Weinstein's assertion that MagneTek was the direct cause of the soil and groundwater contamination at the Property was unwarranted, wrongful, reckless, wanton and made with conscious disregard of MagneTek's rights under its lease with 1160 Dublin.

38.    MagneTek is entitled to recover damages it has sustained, and that it sustains in the future, as a result of Nutting's and Weinstein's tortious and wrongful interference with MagneTek's business by making the false assertion in the May 2 letter that MagneTek directly had caused the soil and groundwater contamination at the Property.  These damages include without limitation the damages set forth in paragraphs 25 and 27 above.

## FOURTH COUNT

### Injurious Falsehood

39.     Paragraphs 1 through 38 are incorporated by reference as if fully restated herein.

40.     The false statement in the May 2 letter, quoted in paragraph 13 above, was made without a basis in fact and was false.  The lack of any factual basis was reflected in Nutting's March 7 report, which conceded that the sources of the soil and groundwater contamination at the Property had not been identified, and the September 13 letter, which reaffirmed that concession.

41.     1160 Dublin and Kanuth relied upon the false statements in the May 2 letter in asserting that MagneTek directly had caused the soil and groundwater contamination at the Property.  Thus, the false statements in Nutting's May 2 letter caused Kanuth and 1160 Dublin to refuse to consent to the assignment of the lease and to take other actions against MagneTek, including bringing the Federal Action.

42.     The false statement in the May 2 letter, quoted in paragraph 13 above, was made maliciously and without regard for the consequences.  Weinstein and Nutting either had knowledge of the falsity of the statement or made the statement with reckless disregard of the lack of foundation for, and falsity of, the statement.

43.     The May 2 letter was calculated to interfere with MagneTek's landlord-tenant relationship to MagneTek's disadvantage, or such consequence was readily foreseeable and recklessly disregarded by Weinstein and Nutting when they sent the May 2 letter to 1160 Dublin.

-13-

44.    MagneTek is entitled to recover damages it has sustained, and that it sustains in the future, as a result of Nutting's and Weinstein's injurious falsehood by making the false assertion in the May 2 letter that MagneTek directly had caused the soil and groundwater contamination at the Property.   These damages include without limitation the damages set forth in paragraphs 25 and 27 above.

<u>Prayer for Relief</u>

WHEREFORE, plaintiff MagneTek, Inc. prays for judgment against defendants The H.C. Nutting Company and Michael D. Weinstein as follows:

a.    for damages from Nutting and Weinstein sustained by MagneTek as a result of Nutting's and Weinstein's disparagement of its business, which constitutes a deceptive trade practice, in an amount to be determined by the trier of fact;

b.    for damages from Nutting and Weinstein sustained by MagneTek as a result of Nutting's and Weinstein's willful, wanton and reckless misconduct, in an amount to be determined by the trier of fact;

c.    for damages from Nutting and Weinstein sustained by MagneTek as a result of Nutting's and Weinstein's tortious interference with MagneTek's leasehold contract and its business relationship with 1160 Dublin, in an amount to be determined by the trier of fact;

d.    for damages from Nutting and Weinstein sustained by MagneTek as a result of Nutting's and Weinstein's injurious falsehoods, in an amount to be determined by the trier of fact;

e.    for interest on any and all damages awarded;

f.    for punitive or exemplary damages in an amount appropriate to punish Nutting and Weinstein and deter others similarly situated;

g.    for attorneys fees and costs incurred to prosecute this matter; and

h.    for such further, necessary and proper relief as this Court may deem just.

Dated:    Columbus, Ohio
          April 27, 1995


John S. Hahn                        John R. Gall (0011813) (Trial Attorney)
Kirk R. Ruthenberg                  Philomena M. Dane (0044064)
Kenneth J. Pfaehler                 SQUIRE, SANDERS & DEMPSEY
Sonnenschein Nath & Rosenthal       1300 Huntington Center
1301 K Street, N.W.                 41 South High Street
Suite 600, East Tower               Columbus, Ohio 43215
Washington, D.C.  20005             (614)  365-2700
(202) 408-6430                      Counsel for Plaintiff
Counsel for Plaintiff                 MagneTek, Inc.
  MagneTek, Inc.

-15-