IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Graham & Graham Properties Trust | : | |
| | : | Case No. C-1-00-922 |
|    Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART |
| OXY USA Inc. | : | AND DENYING IN PART |
| | : | SUMMARY JUDGMENT |
|    Defendant | : | |

This matter comes before the Court on Third-Party Defendant AstroMet, Inc. ("AstroMet")'s Motion for Summary Judgment. (Doc. #30.) For the reasons set forth below, AstroMet's motion is **GRANTED** in part and **DENIED** in part.

**I. FACTUAL BACKGROUND**

Plaintiff Graham & Graham Properties Trust ("The Trust") owns a parcel of land located on Glendale-Milford Road in Hamilton County, Ohio. In September 1967, AstroMet conveyed the property to John Graham (president of AstroMet) and his wife Thelma and Robert Graham and his wife Helen, in one-quarter undivided interests. AstroMet leased the property from the Grahams from September of 1967 until August of 1970. In December of 1999, the interests of the owners and their estates and heirs were consolidated by deed into the Trust. At one time, the property included a substantial slope to the east that tapered down to a small stream. Sometime between 1965 and 1975, Defendant OXY USA Inc. ("OXY")'s predecessor and John Graham

discussed leveling the property to the same elevation as the surrounding area using some sort of "fill." It is unclear which party initiated discussion. (Graham depo. at 51-52). The evidence also shows a genuine issue of material fact as to whether John Graham was approached by OXY's predecessor – if he was in fact approached – in his capacity as part-owner of the property or in his capacity as president of AstroMet, the company leasing the land, and as to when exactly the transaction occurred. (Id.) This litigation involves the fill used to level the property.

After the Trust was alerted to the existence of contamination on its property,[1] it hired an environmental consulting agency ("SRW") in July of 1997 to conduct a site investigation of certain portions of the property and to begin voluntary clean-up efforts. In October of 1997, during the course of its investigation, SRW excavated the site and found fill material that included inventory records bearing the name of OXY's predecessor in interest.

The Trust filed this action against OXY in Ohio state court and OXY removed the case to this Court on diversity grounds. (Doc. #1). The Trust's complaint alleged ten causes of action, of which only the first remains after OXY's motion for summary judgement was partially granted. (Doc. #44). The remaining claim is a statutory claim under Ohio Revised Code section 3746.23, which creates third-party liability for the release of hazardous substances upon another's property. OXY filed a third-party complaint against AstroMet asserting a variety of contribution claims under statutory and common law should OXY be found liable the Trust. AstroMet moves for summary judgment on all claims on the grounds that it did not own or

---

[1] Omega Environmental Services, Inc. discovered contamination on Plaintiff's property while assessing the potential off-site migration of a gas release at a nearby Shell station owned by Englefield Oil Company. Omega left the Ohio marketplace before completing the remedial activities at the Shell station, so Englefield Oil Company hired SRW to undertake the balance of the project.

operate the property when the hazardous fill material was deposited there and that there is no evidence that it caused or contributed to that deposit.

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.

## III.    ANALYSIS

OXY joined AstroMet as a third-party defendant to the action claiming that should the Trust succeed against OXY, AstroMet would be liable to OXY for contribution pursuant to Ohio Revised Code sections 3746.23 and 2307.31, Ohio common law, and § 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), found at 42 U.S.C. § 9613.  AstroMet moves for summary judgment on the grounds that even if OXY were found liable OXY would have no contribution claims against it.

      **A.**      **Ohio Revised Code Section 3746.23 and Contribution Under Ohio Revised**

**Code Section 2307.25(A)**

Federal Rule of Civil Procedure 14(a) allows defendants to bring third party joint tortfeasors into the litigation if the governing substantive law recognizes a right of contribution. <u>See</u> 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1448 (2d ed. 1990).  OXY claims that if it is found liable to the Trust, it is entitled to contribution from AstroMet under Ohio Revised Code § 2307.31. Although §2307.31 was repealed, new § 2307.25(A) allows for a "right of contribution . . . in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share." Ohio Rev. Code § 2307.25(A).  OXY's contribution claim under Ohio Revised Code § 3746.23 fails because the statute does not authorize contribution. Instead, § 3746.23(B) lays the foundation for common liability such that OXY may implead AstroMet for contribution under § 2307.25(A).

Ohio Revised Code § 3746.23 allows a person who voluntarily cleans up a site where hazardous material has been released to recover civilly the costs of the voluntary action "from the owners or operators of the property at the time when those releases occurred and the other persons who caused or contributed to the releases." Ohio Rev. Code § 3746.23(B).  The statute directs that all potentially liable parties shall be joined as defendants, that someone who owned or operated the property at the time of the release is a potentially liable party, and that "[i]f two or more persons are found to have caused or contributed to a release of hazardous substances at or upon the property, the costs of conducting the voluntary action shall be apportioned among each such person on the basis of his respective degree of responsibility for the costs." <u>See</u> Ohio

Rev. Code § 3746.23(B).  The statute clearly contemplates joint liability based on varying degrees of culpability.

AstroMet argues that OXY's statutory claim for contribution must fail because § 2307.25 prohibits contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established.  Id.  Since the Trust's remaining claim against OXY, a claim for costs of the voluntary cleanup action the Trust has undertaken, is not necessarily an intentional tort action and since AstroMet has not yet demonstrated that there is no issue of material fact as to whether OXY acted intentionally, summary judgment is inappropriate.

AstroMet also argues for summary judgment on OXY's statutory contribution claim on the ground that OXY has failed to produce evidence of AstroMet's joint liability under § 3746.23 because AstroMet neither owned nor operated the property when the waste was released nor did it cause or contribute to the release.  (Doc. # 30 at 10.)  Evidence shows, however, that the filling may have begun as early as 1965 (Weinstein depo. at 98-99) or as late as 1973-74 (Egan depo. at 165).  Since AstroMet owned the property until 1967 and leased it until at least August of 1970, there is a genuine issue of material fact as to whether AstroMet owned or operated the property at the time of the release.  The evidence shows a genuine issue of material fact regarding AstroMet's participation in and knowledge of the release.  There is a question of fact as to whether OXY's predecessor approached John Graham regarding filling the property or vice versa.  (Graham depo. at 51-52).  The evidence also shows a genuine issue of material fact as to whether John Graham was approached by OXY's predecessor – if he was in fact approached – in his capacity as part-owner of the property or President of AstroMet, the company leasing the land, and as to when exactly the transaction occurred.  (Id.)  Because there

are issues of material fact relevant to AstroMet's participation and knowledge of the fill, its motion for summary judgment must be **DENIED**.

      **B.**    **Common Law Contribution or Indemnity**

At common law, contribution was "the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement and [arose] from principles of equity and natural justice." MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc., 685 N.E.2d 529, 531 (Ohio 1997) (internal quotations omitted). There is no common law right of contribution or indemnity between joint or concurrent tortfeasors. Maryland Casualty Co. V. Gough, 65 N.E.2d 858, 864 (Ohio 1946). The exception is where one perpetrates a tort and another is made to pay by operation of law or due to the nature of his relationship with the tortfeasor. Then the second party may seek indemnity from the tortfeasor. Albers v. Great Cent. Transp. Corp.,60 N.E.2d 669, 671-72 (Ohio 1945). OXY's claim has none of the indicia of indemnity as it has no relationship with AstroMet and OXY has no duty implied by law to pay for AstroMet's torts. AstroMet's motion for summary judgment on OXY's common law contribution or indemnification claim is therefore **GRANTED**.

      **D.**    **CERCLA**

OXY also claims contribution under 42 U.S.C. § 9613(f), referred to as § 113 of CERCLA. To establish a prima facie case of CERCLA liability against AstroMet, OXY must show that (1) there was a release or threatened release of a hazardous substance; (2) the site of the release or threatened release is a "facility" as that term is defined the statute; (3) the release or threatened release has caused OXY to incur response costs; and (4) AstroMet is among a statutorily defined group of persons, which includes the owner or operator of an owner or

operator of a facility. 42 U.S.C. § 9607(a) (§ 107 of CERCLA); see <u>Kalamazoo River Study Group v. Rockwell Int'l Corp.</u>, 171 F.3d 1065, 1068 (6th Cir. 1999). AstroMet challenges the third and fourth elements. The third element will be satisfied should OXY be found liable to the Trust and ordered to pay the Trust's response costs. Since the fourth element turns on whether AstroMet was an owner or operator of the facility when hazardous materials were released, summary judgment is inappropriate due to the genuine issues of material fact discussed above.

AstroMet cites <u>Centerior Service Co. v. Acme Scrap Iron and Metal Corp.</u>, 153 F.3d 344, 348 (6th Cir. 1998) for the proposition that OXY's § 113 contribution claim must fail because OXY cannot show that the response costs are divisible and therefore be able to be apportioned between potentially responsible parties. (Doc. #30 at 20.) In reality, <u>Centerior</u> explained that because harm is rarely divisible, liability in a § 107 action (an action for direct cost recovery) will normally be joint and several. <u>Centerior</u>, 153 F.3d at 348. In contribution cases under § 113, unlike in a cost recovery § 107 case, the burden is on the plaintiff to establish the defendant's equitable share of response costs. <u>Id.</u> "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Such factors include (1) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished; (2) the amount of the hazardous waste involved; (3) the degree of toxicity of the waste involved; (4) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste; (5) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (6) the degree of cooperation by the parties with the

government officials to prevent any harm to the public health or environment.  See Centerior, 153 F.3d at 354.  There is insufficient evidence in the record at this point to establish AstroMet's role in connection with the factors listed above.  Summary judgment would therefore be premature.

**IV.    CONCLUSION**

For the above stated reasons, AstroMet's motion for summary judgment is **GRANTED** as to OXY's claims for contribution under Ohio Revised Code § 3746.23 and the Ohio common law and **DENIED** as to OXY's claims for contribution under Ohio Revised Code § 2307.25 and § 113 of CERCLA.

IT IS SO ORDERED.


       ___s/Susan J. Dlott_____
       Susan J. Dlott
       United States District Judge